UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | } | |
| | } | |
| HB LOGISTICS, LLC | } | CASE NO. 11-82362-JAC-11 |
| d/b/a MCGRIFF TRANSPORTATION | } | |
| | } | |
| Debtor(s). | } | CHAPTER 11 |

**MEMORANDUM OPINION**

On August 23, 2011, this matter came before the Court for hearing on: (1) Debtor's Motion for Extension of the § 365(d)(5) Deadline; (2) the Motion by BancorpSouth Equipment Finance ("BEF") for Relief from Stay or in the Alternative, for Adequate Protection Payments on Trucks and to Compel Debtor to Assume or Reject Leases; (3) Motion by Wells Fargo Equipment Finance, Inc. ("Wells Fargo") for Relief from Stay on Trailers and/or to Require Debtor to Assume or Reject its Lease; (4) Motion by Regions Equipment Finance Corporation ("REFCO") for Relief from Stay or Alternatively for Adequate Protection Payments on Equipment and Motion to Compel Debtor to Assume or Reject Leases; (5) Motion by General Electric Capital Corporation ("GE Capital") for Relief from Stay and Motion to Require Debtor to Assume or Reject Leases; and (6) debtor's objections to the various motions. At the conclusion of the hearing, the Court continued the matters to allow the parties to brief a preliminary issue as to whether the agreements that are the subject of the various motions are "true leases" or are in fact leases intended as security.

The debtor argues that the agreements do not constitute "true leases" because same contain a Terminal Rental Adjustment Clause ("TRAC"), a common provision that requires a rental

adjustment at lease termination according to the amount realized by the lessor upon sale of the leased equipment. The creditors argue that the subject agreements are "true leases" and that the presence of a TRAC provision in the agreements does not convert same to leases intended as security.

On September 13, 2011, the Court heard oral arguments on the TRAC provision issue. At the conclusion of the hearing, the Court allowed the parties an additional ten days to file supplemental briefs and took the matter under advisement with the understanding that the Court would issue a preliminary opinion on or before October 1, 2011 deciding the TRAC issue.[1]

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the subject matter and the parties of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1), (b)(2)(A) and (o).

## FINDINGS OF FACT

On July 8, 2011, HB Logistics, LLC d/b/a McGriff Transportation, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The debtor is engaged in the business of providing trucking and logistics services and other related transportation activities to various customers. Prior to filing bankruptcy, the debtor purchased certain assets from McGriff Transportation, Inc., an entity which had been in the trucking business since 1965. The debtor continues to operate under the McGriff Transportation name. Each of the subject TRAC agreements originated as obligations between McGriff Transportation, Inc. and the respective creditors. As part

---

[1] At the September hearing, the debtor and counsel for GE Capital requested that GE Capital's motion be continued until October 12, 2011. Subsequently, GE Capital filed a Supplemental Brief to its Reply to Debtor's Response to Motion to Require Debtor to Assume or Reject Leases. Therefore, this opinion will also address the transactions between the debtor and GE Capital.

2

of the McGriff Transportation asset purchase, the debtor entered into an assumption and assignment of the TRAC agreements. The Court will undertake to briefly outline the pertinent facts related to each obligation.

**REFCO:**

On the petition date, the debtor had three TRAC accounts with REFCO designated by account numbers 4-005, 4-006, and 4-004.[2] Each of the REFCO TRAC accounts originated with McGriff Transportation, Inc. before the debtor purchased the trucking company's assets. On or about February 28, 2010, the debtor, McGriff Transportation, Inc., and REFCO executed a document entitled Assignment and Assumption Agreement of Lessee's Interest in all Schedules under Certain Master Lease Agreements under which the debtor assumed the REFCO TRAC accounts.

REFCO TRAC accounts 4-005 and 4-006 provide that the lessee has a right to make a "Lessee's Election" as set forth in part below and have identical TRAC provisions which provide for a fair market purchase option with a Terminal Rate Adjustment Clause:

> "Lessee's Election" means Lessee's written election to (1) return the Equipment as provided at the end of the Term, (2) purchase the Equipment at its **Fair Market Value** at the end of the Term or (3) request Lessor's assistance in arranging or approving Lessee's arrangement of sale of the Equipment to a third party.
>
> 5. <u>Lessee Liability</u>. In the event that the Realized Value of the Equipment is less than the Estimated Residual Value thereof, Lessor shall notify Lessee in writing and Lessee shall, within ten (10) days of receipt of Lessor's written notice, pay to Lessor,

---

[2] *See* ECF No. 218, Ex. 1, 1A, 1B, 2 and 2A. The parties previously submitted an agreed order lifting the stay involving certain accounts designated by account numbers 4-002 and 4-003. REFCO further concedes that another account designated as a "$1.00 purchase option" is a lease intended as security based on the nominal purchase price and, further, that account 4-007 is an equipment finance agreement. Consequently, the only REFCO accounts this opinion addresses are the accounts that include TRAC provisions.

3

> as an adjustment to the rental payable under the Lease, an amount equal to the difference between the Realized Value and the Estimated Residual Value.
>
> 6. <u>Lessor Liability</u>. In the event the Realized Value of the Equipment exceeds the Estimated Residual Value thereof, and provided that Lessee is not then in default under the Lease and its Schedules with Lessor, Lessor shall pay to Lessee, as an adjustment to the rental payment under the Lease, an amount equal to 100% of such excess, but only to the extent Lessor actually receives the Realized Value in cash.[3]

emphasis added

The Estimated Residual Value for both of the TRAC accounts is $227,981.25. Pursuant to the terms of the TRAC provision the difference between the Realized Value and the Estimated Residual value shall be paid to or refunded by REFCO as an adjustment to the rental payments.

The TRAC amount in lease 4-004 is expressed as 25% of the original cost of the leased equipment. The debtor has the option to purchase at the end of the lease for the TRAC percentage of the original equipment cost or return the equipment to REFCO. *See* REFCO Ex. 5, ECF No. 218. If the debtor chooses to return the equipment, the TRAC lease provides as follows:

> If the amount received by Lessor for the TRAC Equipment in such sale or disposition exceeds the sum of the TRAC percentage of Lessor's Cost and the amounts remaining due under the Lease and all costs of sale, any such excess shall be returned by Lessor to Lessee as a rental adjustment. If the amount received by Lessor for the TRAC Equipment in such sale or disposition (after deduction of any amount remaining due under the Lease and all costs of sale) is less than the TRAC percentage of Lessor's Cost, then any such deficiency shall be paid by Lessee to Lessor as a rental adjustment.

**BEF:**

The Court has previously ruled that the 2010 Master Lease Agreement between BEF and the debtor was a financing arrangement based on the $1.00 nominal purchase option at the end of the lease and the debtor has conceded that the 2009 Master Loan and Security Agreement between the

---

[3] ECF No. 218, Ex. 4.

4

debtor and BEF is a financing arrangement. Thus, the only transaction at issue between BEF and the debtor is the 1999 Master Lease Agreement under which the debtor does not have an option to purchase the equipment at the end of the agreement term. Paragraph 5 of the 1999 Master Lease Agreement provides as follows:

> 5. <u>Title to Equipment:</u> The Equipment is, and all times shall remain, the property of the Lessor; and the Lessee shall have only the right to possess and use the same under and subject to the terms, conditions and provisions of this Master Lease and the respective Equipment Schedules . . . .[4]

The amendment to the 1999 Master Lease Agreement includes the following TRAC provision:

> 1. 7. F) After return of any Item of Equipment, Lessor shall cause such item of Equipment to be sold at public or private sale, at wholesale, in any commercially reasonable manner. The "Net Sale Proceeds" for such Item of Equipment shall be the net amount received by and paid to Lessor after deducting the costs and expenses of the sale, including but not limited to, rectifying any condition set forth above which has not been met by Lessee, and otherwise preparing such Item of Equipment for sale.
>
> Lessee hereby recognizes, acknowledges and agrees that Lessor anticipates receiving, and Lessor shall receive as additional rent, upon the scheduled termination of the lease term, a sum equal to 25.00 percent of the Capitalized Lessor's Cost of each Item of Equipment. In the event Lessor does not receive in Net Sale Proceeds the full amount anticipated as additional rent, then Lessee hereby agrees, covenants and binds itself to pay to Lessor on demand an amount equal to the difference in the Net Sale Proceeds and the additional rent due the Lessor upon the Lessor certifying in writing to Lessee the amount of such deficiency. Should termination of the lease occur prior to the scheduled date of its termination, then a sum equal to 25.00 percent of the Capitalized Lessor's Cost of such equipment shall be due the Lessor by the Lessee as additional rent and any deficiency in the additional rent due to Lessor that may exist after Lessor's receipt of the Net sale Proceeds shall be paid by Lessee to Lessor on demand. Provided, however, that upon expiration of the maximum term for any Item of Equipment, Lessee's liability for 25.00 percent of the original Capitalized Lessor's Cost of the Item of Equipment shall be limited to 11.00 percent of the original Capitalized Cost.[5]

---

[4] ECF No. 216, Ex. A.

[5] ECF No. 216, Ex. B through E.

**Wells Fargo:**

On August 3, 2011, Wells Fargo filed a motion to lift stay or alternatively to require debtor to assume or reject its lease. The TRAC provision at issue between the debtor and Wells Fargo provides as follows:

> 3. Stipulated Loss Value: The "Stipulated Loss Value" of Trailers covered by this Lease shall be as noted on Exhibit II.
>
> Terminal Rental Adjustment Clause (TRAC): In accordance with Section 7701(h) of the Internal Revenue Code of 1986, under penalty of perjury, Lessee hereby certifies that it intends that more than 50% of the use of the Equipment is to be in a trade or business of Lessee. Lessor and Lessee agree that at the expiration of the Base Lease Term of the Lease according to its original terms (and not early on account of default or otherwise) the Trailers will be sold by Lessor (or by an agent of Lessor). The proceeds of sale (the "Proceeds") shall be distributed as follows:
>
> 1. First, to reimburse Lessor or its agent for the cost of putting the Trailers in a condition to be sold, sales commissions, legal fees, expenses or repossession and all other expenses of sale.
>
> 2. Second, the balance to Lessor up to an amount equal to $4,795.00 per Trailer.
>
> 3. Third, the balance, if any to Lessee as an adjustment to rent previously paid by Lessee to Lessor pursuant to the Lease.
>
> In the event the Proceeds are less than the sum of item 1 plus item 2 above, the Lessee shall pay to the Lessor the deficiency as additional rent pursuant to the Lease but in any event not more than $4,795.00 per Trailer.
>
> Any amount paid to or by the Lessee pursuant to this Addendum shall be the "Terminal Rental Adjustment."[6]

---

[6] ECF No. 122, Ex. B.

6

Similar to the BEF agreement, the debtor does not have an option to purchase the equipment from Wells Fargo at the expiration of the agreement term. Instead, the trailers were to be returned to Wells Fargo and sold.

**GE Capital:**

As detailed in GE Capital's motion, prior to bankruptcy, the debtor assumed certain agreements between GE Capital and McGriff Transportation, Inc., including a Master Lease Agreement and the Amendment to the Master Lease Agreement dated May 24, 2006. Although the debtor has agreed to surrender some of the equipment several of the assumed agreements remain at issue as summarized below:

(1) Lease Renewal Amendment No. 4176016-001 covers ten pieces of equipment and contains an end of term purchase option price of $235,057.93 maturing on November 30, 2011.

(2) Lease Renewal Amendment No. 4176885-001 covers ten pieces of equipment and contains an end of term purchase option price of $242,134.60 maturing on June 1, 2012.

(3) Lease Renewal Amendment No. 4181219-001 covers ten pieces of equipment and contains an end of term purchase option price of $242,984.60 maturing on January 1, 2012.

(4) Lease Renewal Amendment No. 4188506-001 covers ten pieces of equipment and contains an end of term purchase option price of $242,984.60 maturing on June 1, 2012.

(5) Lease Renewal Amendment No. 4204366-001 covers two pieces of equipment and contains an end of term purchase option price of $48,457.65 maturing on November 30, 2012.

Each of these agreements includes a TRAC provision which reads as follows:

> 9. **FINAL ADJUSTMENT** for each Vehicle will be made upon receipt of the net sale proceeds therefor and, unless any default shall have occurred and except as provided below,

7

Lessor shall pay to Lessee the amount, if any, by which the sum of (a) the net sale proceeds, plus (b) surplus insurance recoveries, if any, on such Vehicle, exceeds the sum of the (c) Termination Value, as hereinafter defined, calculated as of the date of receipt of the last Monthly Rental received by the Lessor with respect to such Vehicle, plus (d) all accrued and unpaid Monthly Rentals and all other amounts then due and remaining unpaid. "Termination Value", as used in this Lease, as of any date other than after the scheduled expiration of the Lease Term for the Vehicle, shall mean the amount equal to the then present worth of all unaccrued Monthly Rentals plus the then present worth of the Residual Value specified in the Schedule "A" relating to such Vehicle (determined by discounting such Monthly Rentals from their respective due dates at the Termination Value Rate specified in the Schedule "A" relating to such Vehicle, and by discounting such Residual Value from the first day of the month following the month in which the first Monthly Rental is due at the Termination Value Rate), compounded at the same intervals as such Monthly Rentals are payable. The Value as of the scheduled expiration of the Lease Term, and any date thereafter, shall mean the Residual Value. If the sum of items (a) and (b) above is less than The Termination Value, Lessee shall, within ten (10) days after notice thereof, pay the deficiency to Lessor as Adjusted Rental without abatement, off-set or counterclaim arising out of any circumstance whatsoever. Lessor shall promptly determine the aforesaid amounts and shall render statements therefor to Lessee. Lessor may apply any sums received as proceeds from any Vehicle which would otherwise be due to Lessee hereunder against any other obligation of Lessee and Lessor may off-set the amount of any such rental adjustment against any claim it may have against Lessee.[7]

## CONCLUSIONS OF LAW

The debtor, as the party contending that the subject lease agreements are something other than what they purport to be, bears the burden of proving that same are disguised security agreements rather than true leases.[8]

---

[7] ECF No. 219, Ex.B.

[8] *In re* Pillowtex, 349 F.3d 711, 717 (3rd Cir. 2003)(Chapter 11 debtor, claiming that purported lease obligation was in fact secured financing arrangement bore burden of proof); *In re Warne*, 2011 WL 1303425 *2 (Bankr. D. Kan. 2011)("[a]s the party contending that the Agreement is not what it purports to be, the Debtor has the burden of proof."); *In re Double G. Trucking of the Arklatex, Inc.*, 432 B.R. 789, 794 (Bankr. W.D. Ark. 2010)(under bankruptcy law, the burden of proof is on the party seeking to characterize a purported lease agreement as a disguised security agreement); *In re Ecco Drilling Co., Ltd.,*, 390 B.R. 211, 226 (Bankr. E.D. Tex. 2008)(burden of proof was upon debtor as the party asserting that alleged finance leases should be recharacterized as disguised security agreements).

Despite the debtor's argument to the contrary, this issue is governed by applicable non-bankruptcy law, i.e. state law.[9] "[P]roperty interests are created and defined by state law,' and '[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."[10] *Id.* at 2616. Thus, the determination of whether a contractual agreement is to be characterized as either a lease or security agreement is a matter of state law. At all relevant times, the debtor was incorporated in and had its principal place of business in the state of Alabama.

According to the terms of the agreements between the debtor and REFCO, any issues arising under the terms of the purported leases are to be decided under Alabama law.[11] Accordingly, the Court will rely on Alabama law to determine whether the transactions between the debtor and REFCO are true leases or leases intended as security. According to the terms of the 2005 Master Lease Agreement between the debtor and GE Capital and 2006 Amendment to the Master lease agreement, any issues arising under the terms of the lease are to be decided under Texas law.[12] The agreements between the debtor and Wells Fargo provide that Minnesota law applies.[13] The Master Lease agreements between the debtor and BEF provide that the laws of the State of Mississippi

---

[9] The debtor cites the case of *United Airlines, Inc. v. HSBC Bank USA,* N.A., 416 F.3d 609 (7th Cir. 2005), but the Court finds that the debtor's reliance upon this case is misguided. *See Butner v. United States*, 440 U.S. 48, 54-55 (1979); *In re Double G. Trucking of the Arklatex, Inc.*, 432 B.R. 789, 794 (Bankr. W.D. Ark. 2010); *In re Brankle Brokerage & Leasing, Inc.*, 394 B.R. 906, 909 (Bankr. N.D. Ind. 2008).

[10] *Stern v. Marshall,* 131 S. Ct. 2594, 2616 (June 30, 2011).

[11] ECF No. 218, Ex. 1.

[12] ECF No. 219, Ex. A.

[13] ECF No. 122, Ex. 1.

apply.[14] Each of these states has adopted substantively identical versions of the Uniform Commercial Code and the legislatures in Alabama, Minnesota and Texas have enacted statutory provisions that treat otherwise qualifying TRAC leases as true leases.

**A. Under Alabama law, the transactions between the debtor and REFCO which were structured as leases by the parties are actually "true leases."**

Like most states, the Alabama Legislature has enacted a TRAC statute that reads:

In the case of motor vehicles as defined in Section 32-8-2(10), notwithstanding any other provision of law, a transaction does not create a sale or security interest merely because the transaction provides that the rental price is permitted or required to be adjusted under the agreement either upward or downward by reference to the amount realized upon sale or other disposition of the motor vehicle.[15]

Pursuant to Alabama's TRAC statute, a transaction involving a motor vehicle does not create a security interest merely because the transaction provides that the rental price is permitted or required to be adjusted by reference to the amount realized upon the sale of the motor vehicle. The debtor argues that the REFCO TRAC accounts do not constitute "true leases" because same contain TRAC provisions which effectively transfer all of the risk and reward of ownership to the debtor. The debtor cites the following cases in support of his argument. *In re Lash*, 2010 WL 514760 (Bankr. M.D.N.C. 2010); *In re Grubs Construction Co.,* 319 B.R. 698 (Bankr. M.D. Fla. 2005); *In re Brankle Brokerage & Leasing, Inc.,* 394 B.R. 906 (Bankr. N.D. Ind. 2008); *In re Zerkle Trucking Co.,* 132 B.R. 316 (Bankr. S.D.W. Va. 1991). The bankruptcy courts in each of these cases found that the subject TRAC provisions provided equity to the lessees and that the leases were transformed into security agreements by virtue of the lessees' equity in the equipment.

---

[14] ECF No. 216, Ex. A.

[15] ALA. CODE § 32-8-60.1 (1975).

10

The Alabama Supreme Court has addressed this equity argument and specifically rejected same in *Sharer v. Creative Leasing, Inc.*, 612 So.2d 1191 (Ala. 1993). In *Sharer,* the lessor of a truck sued the lessee for the amounts owing under the lease following repossession and sale of the truck. *Sharer* explained that in order to be viewed as creating a security interest, a lease agreement must provide the lessee with some ownership interest of the leased property. The Alabama Supreme Court disagreed with the case of *Bill Swad Leasing Co. v. Stikes (In re Tillery),* 571 F.2d 1361 (5th Cir. 1971), in which the Fifth Circuit applied Alabama law and recognized the "equity of the 'Lessee'" in an agreement purporting to be a lease with a "'termination formula' which provided that the lessee would bear any loss or receive the benefit of any gain resulting from the sale of the leased vehicle after termination."[16] The Alabama Supreme Court wrote:

> Viewed as to its economic function, such a termination clause does not represent an equity in the vehicle, but a shifting of the risk that the actual value of the leased vehicle at the time the lease is terminated-as determined by the actual sale of the leased vehicle or, as in the instant case, by the taking of bids-will be different from the predicted "book value" or "depreciated value," e.g., the cost of the vehicle adjusted by a constant depreciation figure. If the actual value at the time of termination is less than the predicted book value, the lessee must pay the lessor the difference; if the actual value at the time of termination is more than the predicted book value, the lessee receives the benefit of this gain. We do not agree that the resulting loss or gain to the lessee necessarily represents an "equity" in the property.
>
> "Equity" in an item, such as a truck, is generally considered to be the amount or value of property over the indebtedness against it. *See Black's Law Dictionary* 540 (6th ed. 1990) (citing *Dorfman v. Dorfman,* 457 S.W.2d 417, 422 (Tex.Civ.App.1970)). The lessee, under the termination scenario provided by the lease agreement at issue, assumes the risk of loss (or gain) in the event that the vehicle, at the end of the lease, cannot be disposed of at an amount equal to its "book value" or "depreciation value." Therefore, it cannot be said that such a shifting of the risk of loss in value of the item alone is sufficient to hold that any lease agreement containing such a clause necessarily was intended to create a security interest.

---

[16] *Sharer v. Creative Leasing, Inc.*, 612 So.2d 1191, 1195 (Ala. 1993).

11

Based upon the rationale of *LMV Leasing, supra,* and its interpretation of a substantially similar agreement, we hold that the agreement between Sharer and Creative Leasing is a lease agreement and did not create a security interest.[17]

Based on the forgoing, the Court rejects the debtor's equity argument and finds that *Sharer* is controlling.

The debtor also argues that Alabama's TRAC statute was implicitly repealed or overruled by a subsequent amendment of Alabama's version of the UCC which provides how a true lease is to be distinguished from a security interest and reads as follows:

> **§ 7-1-203. Lease distinguished from security interest.**
> (a) Whether a transaction in the form of a lease creates a lease or security interest is determined by the facts of each case.
>
> (b) A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee, and:
>
> (1) The original term of the lease is equal to or greater than the remaining economic life of the goods;
>
> (2) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;
>
> (3) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement; or
>
> (4) The lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.
>
> (c) A transaction in the form of a lease does not create a security interest merely because:

---

[17] *Sharer v. Creative Leasing, Inc.,* 612 So.2d 1191, 1195 -1196 (Ala.1993).

(1) The present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into;

(2) The lessee assumes risk of loss of the goods;

(3) The lessee agrees to pay, with respect to the goods, taxes, insurance, filing, recording, or registration fees, or service or maintenance costs;

(4) The lessee has an option to renew the lease or to become the owner of the goods;

(5) The lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed; or

(6) The lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

(d) Additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised.

Additional consideration is not nominal if:

(1) When the option to renew the lease is granted to the lessee, the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed; or

(2) When the option to become the owner of the goods is granted to the lessee, the price is stated to be the fair market value of the goods determined at the time the option is to be performed.

(e) The "remaining economic life of the goods" and "reasonably predictable" fair market rent, fair market value, or cost of performing under the lease agreement must be determined with reference to the facts and circumstances at the time the transaction is entered into.[18]

---

[18] ALA.CODE § 7-1-203.

13

Contrary to the debtor's assertions, the Court finds that the Alabama Legislature did not repeal the Alabama TRAC statute by implication when it enacted § 7-1-203. Section 7-1-203 does not specifically reference ALA. CODE § 32-8-60.1 and the two statutes can be easily read together without conflict. The Supreme Court has held that "a later statute will not be held to have implicitly repealed an earlier one unless there is a clear repugnancy between the two" and other courts have repeatedly applied this analysis.[19]

The Official Comments to § 7-1-203 explain that the section "draws a sharper line between leases and security interests disguised as leases to create greater certainty in commercial transactions." When read in tandem § 7-1-203 and § 32-8-60.1 merely further sharpen the line between leases and security interests disguised as leases to create greater certainty in commercial transactions involving motor vehicles. Accordingly, there is no repeal by implication and both provisions remaining binding.

Construing these statutes in tandem, the Court finds that the TRAC agreements between the debtor and REFCO are true lease agreements and same did not create a security interest based on the facts of this case. Subsection (b) of ALA. CODE § 7-1-203 creates a "bright line" test to determine "when a transaction in the form of a lease creates a security interest as a matter of law

---

[19] *United States v. Fausto*, 484 U.S. 439, 453 (1988); *See also Jones v. Conradi,* 673 So.2d 389, 393 (Ala. 1995)(finding the statutes in issue would have to be "directly repugnant" for the court to find repeal by implication); *Currie v. Diamond Mortg. Corp. of Ill.*, 859 F.2d 1538, 1542 (7th Cir. 1988)(explaining that "[c]ourts strongly disfavor repeal by implication and will invoke this doctrine of statutory construction only where a statute enacted later in time is repugnant to an earlier statute such that the two acts cannot stand together."); *Cooper v. Wal-mart Stores, Inc.*, 595 F.Supp. 964 (C.D. Ill. 1997)(finding that an implied repeal results only when the terms and necessary operation of a later statute cannot be harmonized with the terms and effect of an earlier statute).

14

based upon the terms of the transaction."[20] If a security interest is not created per se under § 7-1-203(b), then the court must consider "the 'facts of each case' to determine if an economically meaningful interest was reserved to the lessor at the end of the lease term."[21] As discussed above in *Sharer*, it cannot be said in Alabama that the fact that the purported lease agreements contain TRAC provisions alone is sufficient to hold that same were necessarily intended to create a security interest.[22]

The "bright line" test under § 7-1-203(b) creates a two part test under which a transaction in the form of a lease will be deemed to have created a security interest as a matter of law if: (1) the agreement cannot be terminated by the lessee, **and** (2) the Court finds that any one of the following requirements is satisfied –

> 1) The original term of the lease is equal to or greater than the remaining economic life of the goods;
>
> (2) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;
>
> (3) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement; or
>
> (4) The lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease

---

[20] *In re Warne*, 2011 WL 1303425 *3 (Bankr. D. Kan. 2011)(describing the "bright line" test under § 1-203 of the UCC).

[21] *Id.*

[22] *Sharer v. Creative Leasing, Inc.,* 612 So.2d 1191, 1195 -1196 (Ala.1993).

15

agreement.[23]

Although the REFCO TRAC agreements cannot be terminated by the debtor, the Court finds that none of the other four requirements is present under the terms of the TRAC agreements. Each of the REFCO TRAC agreements matures within the next five months and REFCO has submitted an appraisal indicating that the trucks which are subject to these purported leases are currently valued between $22,000 and $30,000 each.[24] Accordingly, the Court finds that the original term of the lease is not equal to or greater than the remaining economic life of the trucks. Subsections 7-1-203(b)(2) and (3) do not apply because the TRAC leases do not have mandatory or optional renewal provisions.

Nor does the Court find that the debtor has an option to become the owner of the trucks for no additional consideration or for nominal consideration at the end of the lease terms. Under REFCO TRAC accounts 4-005 and 4-006 the debtor has the option to purchase the trucks for the fair market value at the end of the transaction term. TRAC account 4-004 provides that the debtor has the option to purchase for an amount equal to 25% of the original value of the equipment at the end of the transaction term. Subsection (d)(2) of § 7-1-203 provides that additional consideration is not nominal if "the price is stated to be the fair market value of the goods determined at the time the option is to be performed." Here the debtor has the option to purchase for the fair market value under two of the TRAC agreements and the parties have stipulated that the 25% purchase option in the third agreement is a reasonable estimate of the fair market value of the equipment under that lease. Thus, the fourth requirement under § 7-1-203(b) is not satisfied.

---

[23] ALA. CODE § 7-1-203(b).

[24] ECF No. 218, Ex. 6.

16

Finally, the Court finds based upon the facts of the case and pursuant to § 7-1-203(c) that REFCO retained a significant reversionary interest in the subject equipment and that the debtor does not have any equity in same. Thus, the purported lease agreements are "true leases" under Alabama law.

**B. Under Alabama and Texas law, the transactions between the debtor and GE Capital which were structured as leases by the parties are actually "true leases."**

The Alabama and Texas versions of the UCC and TRAC statutes are substantively identical.[25] Accordingly, the Court finds that the inclusion of a TRAC provision in the purported lease agreements between the debtor and GE Capital alone is not sufficient to support a finding that the same are disguised security agreements and the TRAC provisions do not represent equity in the subject equipment.

All other facts under the leases indicate that same are true leases under both Texas and Alabama law: (1) the lease term does not exceed the life of the equipment as indicated by the debtor's desire to retain the equipment and representations to the Court that same is essential to the operation of its business; (2) the debtor is not required to renew the leases; (3) the debtor does not have an option to renew the leases for the remaining economic life of the equipment without providing additional consideration; and (4) the end of term purchase options are substantial and representative of the fair market value of the equipment. Accordingly, the Court finds that the economic realities of the purported lease agreements between the debtor and GE Capital require a finding that same are true leases under both Alabama and Texas law.

---

[25] TEX. BUS. & COM. CODE ANN. § 1-203 and Tex. Transp. Code Ann. § 501.112.

17

**C. Under Alabama and Mississippi law, the transactions between the debtor and BEF which were structured as leases by the parties are actually "true leases."**

Mississippi's version of the UCC is substantively identical to that of Alabama.[26] Although BEF has not argued that Mississippi has passed a TRAC neutral statute similar to that of Alabama's, the Court finds that the purported lease agreements are clearly true leases under MISS. CODE § 75-1-203. Although the leases are not subject to termination, the debtor cannot satisfy any of the other four requirements under the bright line established by MISS. CODE § 75-1-203: (1) The original term of the lease is not equal to or greater than the remaining economic life of the goods as BEF will not receive its return on its investment until the lease has expired and BEF sells the leased equipment. Further, BEF is guaranteed to receive at least 25% of the original cost of the equipment from the sale of the equipment at the end of the lease term pursuant to the terms of the TRAC provision. (2) The debtor is not required to renew the lease, nor does the debtor have the option to renew same. Instead, BEF is entitled to sale the equipment at the end of the lease and realize all proceeds from the sale. (3) The debtor has no option to renew the lease for nominal consideration and has no right to become the owner of the goods at the end of the lease. Accordingly, the Court finds that the agreements between the debtor and BEF are true leases based on the economic realities of same.

**D. Under Alabama and Minnesota law, the transactions between the debtor and Wells Fargo which were structured as leases by the parties are actually "true leases."**

Similar to Alabama, Minnesota has a TRAC neutral statute which reads as follows:

---

[26] MISS. CODE. § 75-1-203.

18

Case 11-82362-JAC11    Doc 249    Filed 09/29/11    Entered 09/30/11 07:47:32    Desc
Main Document    Page 18 of 20

> Notwithstanding any other provision of sections 168A.01 to 168A.31 or other law, in the case of a lease agreement with respect to a vehicle other than a vehicle used primarily for personal, family, or household purposes, the determination whether the lease agreement constitutes a lease and does not create a conditional sale or security interest shall be governed by the stated intent of the parties set forth in the lease agreement, unless it can be shown by a preponderance of the evidence that the terms of the lease agreement cannot be reconciled with the stated intent. **In no event shall the lease agreement be deemed to create a conditional sale or security interest merely because it permits or requires the amount of rental payments to be adjusted upward or downward by reference to the amount realized by the lessor upon sale or disposition of the vehicle.**[27]

emphasis added

Further, the Alabama and Minnesota versions of the UCC statutes are substantively identical.[28] Accordingly, the Court finds that the inclusion of a TRAC provision in the purported lease agreements between the debtor and Wells Fargo alone is not sufficient to support a finding that same are disguised security agreements and the TRAC provisions do not represent equity in the subject equipment.

All other facts under the leases indicate that same are true leases under both Minnesota and Alabama law: (1) the lease term does not exceed the life of the equipment as evidence by the anticipated 20% residual value of the equipment at the end of the lease term; (2) the debtor is not required to renew the leases; (3) the debtor does not have an option to renew the leases for the remaining economic life of the equipment; and (4) the debtor does not have the option to purchase the equipment at the end of the lease term. Instead, the lease requires the debtor to return the

---

[27] MINN. STAT. § 168A.17(a)(2008).

[28] MINN. STAT. § 336.1-203.

19

equipment to Wells Fargo. Accordingly, the Court finds that the subject TRAC leases are true leases based on the facts of the case.

### (e) § 365(d)(5) Deadline Extension

In light of the history of this case and with the Court having now determined that each of the disputed TRAC leases are true leases, and the Court further taking judicial notice that the debtor has not been able to satisfy the lease payments and that the subject equipment continues to depreciate, the Court hereby denies debtor's motion to extend the deadline under § 365(d)(5).

A separate order will be entered consistent with this opinion.

Done and Ordered this day September 29, 2011

/s/ Jack Caddell
Jack Caddell
U.S. Bankruptcy Judge

JAC/mhb
xc: Debtor(s)
 Paul M. Hoffmann, attorney for debtor
 Stuart Maples, attorney for debtor
 William J. Gibbons, Jr., attorney for BancorpSouth Equipment Finance
 William L. Phillips, III, attorney for Regions Equipment Finance Company
 C. Ellis Brazeal, III, attorney for Wells Fargo Equipment
 Windy Hillman, attorney for General Electric Capital Corporation
 Richard Blythe, bankruptcy administrator